IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NEXT GENERATION GROUP, LLC,
*et al.*

    v.      Civil No. CCB-11-0986

SYLVAN LEARNING CENTERS, LLC,
*et al.*

## MEMORANDUM

Plaintiffs Next Generation Group, LLC (NGG) and Noor M. Yahia have filed suit against Sylvan Learning Centers, LLC (SLC), Sylvan Learning, Inc. (SLI), and Educate, Inc. in connection with NGG's purchase of a Sylvan Learning Center in Irving, Texas. According to NGG's complaint, Sylvan offered to sell NGG franchise licenses and assets for two existing, operating Sylvan Learning Centers, in Arlington, Texas and Allen, Texas, as well as franchise licenses and assets to start a new Sylvan Learning Center in Irving. NGG alleges that Sylvan[1] induced it to purchase the Irving site – a start-up business venture – by also promising to sell the two existing sites, which were more likely to be profitable, and then reneged on the Arlington and Allen deals shortly after NGG opened the Irving site. NGG also alleges that Sylvan later refused to permit NGG to resell the Irving center, despite having initially approved the prospective purchaser, unless NGG agreed to drop its lawsuit against Sylvan. NGG has sued Sylvan for breach of contract, fraudulent inducement, intentional misrepresentation, violation of the Maryland Franchise Registration and Disclosure Law (MFRDL), and tortious interference

---

[1] For the purposes of this decision, the court refers to the defendants collectively as "Sylvan." The plaintiffs allege that the defendants share a business address, common employees, and were represented in the negotiations in question by the same representative. It is not necessary at this stage to determine precisely which party – if any – bears liability for each specific count.

with prospective economic advantage. (ECF No. 14, Exh. 1, Second Amended Complaint). Now pending are Sylvan's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 9) and NGG's Motion for Leave to File Second Amended Complaint (ECF No. 14), which Sylvan has opposed (ECF No. 20). The issues in this motion have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the motion to file a second amended complaint will be granted, and the defendants' motion to dismiss will be denied as moot.

## BACKGROUND

NGG's discussions with Sylvan about franchise opportunities began in late August 2007, when Ralph Rillon, an agent for Sylvan, and Mr. Yahia, one of the plaintiffs, entered into negotiations about the Allen, Arlington, and Irving sites. According to NGG, "[d]uring all these conversations, Mr. Yahia was clear that he was interested in purchasing several Sylvan franchises because he believed that he needed more than one to make the business venture generate the profits he desired." (ECF No. 14, Exh. 1, Second Amended Compl., ¶11). Mr. Yahia emphasized his interest in purchasing all three sites because "[p]urchasing a new Sylvan territory was significantly riskier than purchasing an already operating Sylvan learning center franchise. A new territory would require far greater financial and time commitment on the part of the franchise purchaser." (*Id.* at ¶13). Mr. Rillon proposed selling combinations of existing and prospective Sylvan learning centers in order to incentivize the purchase of the new Irving site. (*Id.* at ¶12). "From the perspective of [Sylvan] it is very attractive to sell a new franchise territory because the risk and financial commitment are placed with the franchisee." (*Id.* at ¶13).

Mr. Yahia and Sylvan signed a license agreement for the Irving site and finalized the deal

2

on November 1, 2007. (Irving License Agreement, ECF No. 10). The license agreement contained a general integration clause.[2]

Also during the first week of November 2007, after extensive discussions, Mr. Rillon offered to sell Mr. Yahia the license, assets, and property for the Arlington site. Negotiations continued with respect to the details of that sale and also the Allen center. (Second Amended Compl. at ¶14). In February and March of 2008, Mr. Rillon advised Mr. Yahia in writing that Sylvan had approved his acquisition of the Arlington and Allen learning centers, respectively. *(Id.* at ¶21-22; Exh. B; Exh. C). On March 11, 2008, Mr. Rillon sent signed Letters of Intent to Mr. Yahia for the purchase of both sites; Mr. Yahia countersigned and returned the letters. (*Id.* at ¶23; Exh. D; Exh. E; Exh. F). Meanwhile, in the last week of March, the Irving center opened for business. (*Id.* at ¶18).

Mr. Yahia and Mr. Rillon were scheduled to close the deal on the Allen site on April 17, 2008. (*Id.* at ¶29). On April 15, 2008, "approximately three weeks after Mr. Yahia opened the Irving center," Mr. Rillon informed Mr. Yahia that Sylvan would not sell him the license and assets for any more franchises. (*Id*. at ¶¶18, 32). Sylvan offered no explanation for the last-minute change, which left NGG with ownership of the nascent Irving learning center and no prospect of buying the other two centers. NGG describes this as a "bait and switch tactic to induce Mr. Yahia to purchase a new and untested Sylvan Franchise territory and create a new learning center franchise at his own risk and expense." (*Id.* at ¶33). On that basis, NGG has sued for breach of contract, intentional misrepresentation, fraudulent inducement, and violation of the MFRDL.

Several years later, in March 2011, NGG sought to resell the Irving site "in an attempt to

---

[2] Specifically, the Irving license agreement states that "this instrument constitutes the entire agreement of the parties" and "terminates and supersedes any prior agreement between the parties concerning the same subject matter." (ECF No. 10, §24.9).

mitigate [its] losses." (*Id.* at ¶37). Sylvan approved the prospective purchaser in March 2011. NGG filed this suit for breach of contract, intentional misrepresentation, and fraudulent inducement on April 14, 2011. (ECF No. 1, Complaint). In May 2011, Sylvan reversed course and refused to consummate the sale of the Irving Center unless NGG dropped the lawsuit. (Second Amended Compl., at ¶308-39). The following month, NGG amended its complaint to add a count of tortious interference with economic advantage based on Sylvan's refusal to approve the sale. (ECF No. 7, Amended Complaint).

Sylvan has filed a motion to dismiss NGG's first amended complaint. NGG has filed a motion for leave to file a second amended complaint, which Sylvan has opposed on the grounds that the amendment would be futile and would prejudice Sylvan. Among other things, Sylvan claims that (1) no enforceable contract was breached; (2) NGG's tort claims are barred by the integration clause in the license agreement for the Irving site; (3) the economic loss rule bars NGG's tort and MFRDL claims; (4) NGG could not have reasonably relied on representations not memorialized in the Irving license agreement; and (5) NGG failed to plead fraud with requisite particularity.

## DISCUSSION

At this stage, the court need only decide whether to grant leave to amend. Under FRCP 15(a)(2), leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting FRCP 15(a)). Fourth Circuit case law directs that "[a] motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). A review for futility is not equivalent to an evaluation of the underlying merits of the

case. To the contrary, "[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment." *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir. 1980), *cert. dismissed,* 448 U.S. 911, 101 S.Ct. 25 (1980). "Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is *clearly insufficient or frivolous on its face.*" *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (emphasis added).

Accordingly, without addressing the ultimate merits of the claims, the court finds that NGG's second amendment is warranted because at least some of its claims are not futile. As a threshold matter, NGG has demonstrated that the claims against SLI – a party added in the proposed amended complaint – are *not* barred by the statute of limitations. Sylvan argues that NGG's claims are prohibited by the statute of limitations because NGG failed to meet the requirements of Federal Rule of Civil Procedure 15(c), which permits an amended pleading to relate back to the date of the original pleading under certain circumstances. The Fourth Circuit has explained that under Rule 15, "an amendment that changes the party against whom a claim is asserted relates back to the date of the original pleading if (1) the claim in the amended complaint arose out of the same transaction that formed the basis of the claim in the original complaint; (2) the party to be brought in by the amendment received notice of the action such that it will not be prejudiced in maintaining a defense to the claim; and (3) it should have known that it would have originally been named a defendant 'but for a mistake concerning the identity of the proper party.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007). The record shows that NGG's amended pleading meets these conditions for relation back. First, the claim clearly arose out of the transaction set forth in the original complaint. Moreover, as in *Praxair*,

the original complaint provided notice by making it "conceptually clear" whom it was suing and on what grounds. 494 F.3d at 473 ("[T]he complaint described the nature of the contract and the original parties to it. Any corporation maintaining reasonable business records would be able rapidly to route the complaint to the appropriate subsidiary responsible for that contract."). Here, as in *Praxair*, the added party has "employed the same attorney[]" as the original party.[3] *Id.* "Their identity of interest eliminates any worry that [the added defendant] was caught by surprise when the complaint was amended." *Id.* at 473-74. The Fourth Circuit has explained that the focus of Rule 15 is the "notice to and effect on the new party." *Id.* at 471. Sylvan has not demonstrated any absence of notice or adverse impact on SLI, particularly because discovery in this case has not begun.

More broadly, NGG has demonstrated to the satisfaction of this court that its claims pass a basic futility review. Sylvan argues, for example, that NGG's tort claims of fraudulent misrepresentation and intentional misrepresentation are barred by the integration clause in the Irving license agreement and the statute of frauds. This is not so. "[T]he law in Maryland . . . is that a plaintiff can successfully bring a tort action for fraud that is based on false pre-contract promises by the defendant even if (1) the written contract contains an integration clause and even if (2) the pre-contractual promises that constitute the fraud are not mentioned in the written contract. Most of our sister states apply a similar rule." *Greenfield v. Heckenbach*, 144 Md. App. 108, 130, 797 A.2d 63, 76 (2002).[4] As in *Greenfield*, the integration (or "merger") clause in the Irving license agreement is a general one – that is, it does not disclaim specific oral representations. (*See* ECF No. 10, §§ 24.2, 24.6, 24.7, 24.9). "[A] general merger clause does

---

[3] According to Sylvan, SLC (the original defendant) and SLI have common employees, share the same offices, and negotiate sales jointly, in addition to being represented by the same counsel in this matter.
[4] The parties have not briefed the issue of whether Texas law or Maryland law controls. For the purpose of this order, the court assumes, without deciding, that Maryland law applies because the Irving license agreement specifically provides so. ECF No. 10, § 19.

not bar parol evidence of pre-contractual fraudulent representations." *Greenfield*, 144 Md. App at 130. *Greenfield* also held, contrary to Sylvan's contentions, that "the statute of frauds does not bar a tort suit for either fraud or negligent misrepresentation because those counts are not based 'on . . . [the] contract' between the parties but are based on misrepresentations that induced the contract." *Id.* at 140, citing 73 Am.Jur.2d *Statute of Frauds* § 492 (2001) ("tortfeasors and fraudulent intermeddlers will not be permitted to use the statute of frauds as a defense to a wrongful act or as a means of consummating a fraudulent design").[5]

Sylvan also argues that NGG's amendments are futile because the presence of an integration clause in the written contract renders any reliance by NGG on oral representations unreasonable.[6] Sylvan is correct that "[t]he presence of an integration clause goes directly to the disputed factual question of whether the [plaintiffs] were actually deceived by the representations made by the [defendants]." *Greenfield,* 144 Md. App. at 132. This, however, is a *factual* question inappropriate for resolution on a review for futility. *See id.* (holding that the reasonableness of the plaintiffs' reliance on oral representations could not be resolved at the summary judgment stage and, at least in that case, was an issue "for the jury to consider"). Moreover, at a minimum, there is reason to believe NGG *could* reasonably have relied on Sylvan's representations. When subsequent courts have distinguished *Greenfield*, it is often because they conducted factual inquiries that revealed the plaintiffs did not reasonably rely on representations made outside the written agreement. *See, e.g., Rubin Squared, Inc. v. Cambrex Corp.*, 2007 WL 2428485 (S.D.N.Y. Aug. 24, 2007) *aff'd,* 321 F. App'x 14 (2d Cir. 2009)

---

[5] Relatedly, the economic loss rule also does not bar claims of fraudulent inducement to contract. *See Superior Bank, F.S.B. v. Tandem Nat. Mortg., Inc.*, 197 F. Supp. 2d 298, 311 (D. Md. 2000); *see also Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 885 (8th Cir. 2000) ("Courts generally agree that fraud in the inducement, necessarily prior to the contract, is independent of the contract and therefore not barred by the economic loss doctrine.").

[6] "Reasonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud . . . ." *Learning Works, Inc. v. The Learning Annex, Inc.,* 830 F.2d 541, 546 (4th Cir. 1987).

(applying Maryland law) (holding that the plaintiff's reliance on oral representations was not reasonable because that plaintiff was "a corporation consummating a nine-figure acquisition relying on oral promises representing both a massive financial acquisition and the allocation of operational control.");[7] *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283, 1286 (D.C. Cir. 1988) (also finding reliance on representations outside the written agreement to be unreasonable by virtue of the "lengthy, detailed and comprehensive" written agreement and the "eight months of vigorous negotiations" that preceded it). Under the facts of this case, by contrast, such reliance would not be *obviously* unreasonable, as the negotiations leading up to the Irving license agreement were not notably lengthy, the plaintiff is not (based on the record to date) particularly sophisticated or experienced in these type of sales, and there is evidence that steps continued to be taken toward consummating the other two purchases as the plaintiff alleges.

Furthermore, contrary to Sylvan's contentions, the amended complaint does not clearly fail to meet the pleading standards for fraud under Federal Rule of Civil Procedure 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Fourth Circuit has elaborated: "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999) (internal quotations omitted). Here, NGG has alleged that that Mr. Rillon repeatedly promised to sell Mr. Yahia the licenses to the Allen and Arlington sites, knowing that Mr. Yahia intended to buy them to offset the risk he assumed by purchasing the Irving site. NGG has referenced and submitted to the court emails and other documents in which Mr. Rillon pledged to

---

[7] Unpublished opinions are not binding; this case is cited solely for its reasoning.

sell the Arlington and Allen sites until just after NGG opened the Irving site for business, when he withdrew those offers without explanation. NGG contends that Sylvan promised to sell the Arlington and Allen sites in order to induce NGG to undertake the risky venture of starting a new Sylvan site. As in *Keeney v. Larkin,* "the Amended Complaint makes sufficiently clear which statements are alleged to have been misleading and the reason or reasons why [the plaintiff] contends those statements were misleading. Moreover, the Amended Complaint provides the time, place, and contents of the false representations, as well as the identity of [] the parties making the misrepresentations . . . ." 306 F. Supp. 2d 522, 528 (D. Md. 2003) *aff'd*, 102 F. App'x 787 (4th Cir. 2004).

Rule 9(b) "ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery." *Harrison*, 176 F.3d at 784. In this case, NGG has clearly put defendants on notice of the conduct in question. There is no indication that the suit is frivolous. Moreover, NGG has already provided some evidence of the misrepresentations in question. Importantly, Rule 9(b) does not "require[] plaintiff to set forth facts which, because of the lack of discovery, are in the exclusive possession of the Defendants." *Keeney*, 306 F. Supp. 2d at 528. In sum, the complaint does not fall so short of the of Rule 9(b) standard as to render the proposed amendment futile.

Having concluded that the proposed amendment is not futile, at least as to some of the counts, the court need only consider whether it is prejudicial or made in bad faith. Evidence of bad faith is entirely lacking in this case. As to prejudice, this case is analogous to *Edwards v. City of Goldsboro*, where the Fourth Circuit overturned a district court's decision to deny the

plaintiffs leave to file an amended complaint. 178 F.3d 231 (4th Cir. 1999). There, the Fourth Circuit held that, contrary to the district court's finding, it was "not *obvious* from the record" that "the Defendants would have been prejudiced by the amendments." *Id.* at 243 (emphasis added). As here, the amended complaint "merely sought to add specificity to [] matters" contained in the previous complaint, and "[p]rejudice to the Defendants could hardly flow from such an addition." *Id.* Indeed, the Fourth Circuit has very narrowly defined prejudice sufficient to overcome the liberal standard for granting amendments. Even where "a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, . . . that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). As previously noted, this case has not reached that stage or even close to it. The proposed amendment does not add counts or legal theories, but rather clarifies the identity and basis of alleged culpability of the various defendants as required by the Rule 9(b) pleading standards. Accordingly, the proposed amendments do not prejudice the defendants.[8]

For all the above reasons, the plaintiff's motion for leave to file a second amended complaint will be granted and defendants' motion to dismiss will be denied as moot. A separate Order follows.

<u>January 5, 2012</u>            <u>/s/</u>
Date            Catherine C. Blake
          United States District Judge

---

[8] "[A]bsence of prejudice . . . will normally warrant granting leave to amend." *Davis*, 615 F.2d at 613.